No. 44,682

Warren H. Babcock, *Appellant* and *Cross-Appellee,* v. The City of Kansas City, Kansas, a Municipal Corporation, Joseph H. McDowell, Joseph P. Regan and Earl B. Swarner, *Appellees* and *Cross-Appellants.*

(419 P. 2d 882)

Opinion filed November 5, 1966.

*Charles W. Thompson,* of Kansas City, argued the cause, and *Lloyd G. Alvey* and *James P. Lugar,* of Kansas City, were with him on the briefs for appellant and cross-appellee.

*Joseph A. Bukaty,* Assistant City Attorney, of Kansas City, argued the cause, and *C. W. Brenneisen, Jr.,* City Attorney, *Matthew G. Podrebarac,* City Counselor, *James B. Flack* and *A. B. Howard,* Assistant City Attorneys, all of Kansas City, were with him on the briefs for appellees and cross-appellants.

*Albert B. Martin,* General Counsel, *Wright W. Crummett* and *Wendell E. Yockey,* of Topeka, were on the brief of League of Kansas Municipalities as *amicus curiae.*

The opinion of the court was delivered by

Fatzer, J.: This was an action in the nature of quo warranto brought by the plaintiff, Warren H. Babcock, an individual, challenging the validity of seven annexation ordinances enacted by the city of Kansas City and published between February 11, 1965, and

June 4, 1965, which substantially enlarged the city both as to population and area.

Issues were formed by the parties' pleadings and the case was tried to the district court of Wyandotte County, sitting *en banc,* upon the parties' written stipulation of facts. The five judges of the district court made unanimous findings of fact and conclusions of law from which both parties have appealed.

It is necessary to discuss and decide only the city's contention the district court erred in its conclusion of law that Mr. Babcock, as an individual, had "the legal right to maintain this action." For reasons hereafter stated, we conclude the district court erred in its conclusion of law, and hold that K. S. A. 60-1203 does not authorize or empower a private individual to maintain or prosecute an action questioning the validity of proceedings extending the corporate limits of a city and that such an action can be prosecuted only at the instance of the state by its proper officers.

Throughout the history of the jurisprudence of this state, this court has never permitted a private individual to bring an action attacking the legality of the corporate existence of a city, where the plaintiff's right to bring the action was properly challenged. Likewise, it has been uniformly held that the extension of corporate limits to include new territory, under statutory authority, is, in effect, a reorganization of the city, and an action attacking the legality of such reorganization attacks the corporate integrity of the city in the same manner as if the city's original organization were attacked. Moreover, the legality of the organization or reorganization of a city cannot be questioned in a collateral proceeding or at the suit of a private individual but must be prosecuted by the state acting through its proper officers. (*Topeka v. Dwyer,* 70 Kan. 244, 78 Pac. 417; *Railway Co. v. Lyon County,* 72 Kan. 16, 84 Pac. 1031; *Chaves v. Atchison,* 77 Kan. 176, 94 Pac. 624; *Gardner v. Benn,* 81 Kan. 442, 105 Pac. 435; *Price v. City of McPherson,* 92 Kan. 82, 139 Pac. 1162; *Horner v. City of Atchison,* 93 Kan. 557, 144 Pac. 1010; *Mason v. Kansas City,* 103 Kan. 275, 173 Pac. 535; *Wellman v. City of Burr Oak,* 124 Kan. 780, 262 Pac. 607; *Smith v. City of Emporia,* 168 Kan. 187, 211 P. 2d 101, 13 A. L. R. 2d 1272.) The cases are legion on the point and the list of authorities is not intended to be exhaustive.

In *Bishop v. Sewer District No. 1,* 184 Kan. 376, 336 P. 2d 815, the reason for the foregoing rule was said to be well stated in

*A. T. & S. F. Rld. Co. v. Wilson, Treas.,* 33 Kan. 223, 6 Pac. 281, at page 228, as follows:

> " 'It would be dangerous and wrong to permit the existence of municipalities to depend on the result of private litigation. Irregularities are common and unavoidable in the organization of such bodies, and both law and policy require that they shall not be disturbed except by some direct process authorized by law, and then only for very grave reasons,' " (1. c. 379.)

The same general rule has been applied in situations where private individuals have endeavored to challenge the legality of the organization of school districts (*A. T. & S. F. Rld. Co. v. Wilson, Treas.,* supra; *Schur v. School District,* 112 Kan. 421, 210 Pac. 1105; *Scamahorn v. Perry,* 132 Kan. 679, 296 Pac. 347; *School District v. Shawnee County Comm'rs,* 153 Kan. 281, 110 P. 2d 744), or made claims that drainage districts were illegally or invalidly organized (*Railroad Co. v. Leavenworth County,* 89 Kan. 72, 130 Pac. 855; *Euler v. Rossville Drainage District,* 118 Kan. 363, 235 Pac. 95; *Kimmel v. Wolf River Drainage Dist.,* 138 Kan. 209, 25 P. 2d 585), or sought to enjoin alleged illegal levies of ad valorem taxes pursuant to G. S. 1949, 60-1121 (now repealed) or K. S. A. 60-907, where the action is based upon alleged illegality or irregularity of the organization of the municipality or district levying the taxes. (*A. T. & S. F. Rld. Co. v. Wilson, Treas.,* supra; *Schur v. School District,* supra; *Wellman v. City of Burr Oak,* supra; *Railway Co. v. School District,* 114 Kan. 67, 217 Pac. 296; *Shaffer v. Ford County Comm'rs,* 133 Kan. 256, 299 Pac. 613.) However, in *Schulenberg v. City of Reading,* 196 Kan. 43, 51, 410 P. 2d 325 K. S. A. 60-907 was construed to permit private individuals *to attack ordinances creating a district which had no attributes of corporate existence and levied no taxes.*

In one form or another, commencing with *Craft v. Jackson Co.,* 5 Kan. 518\*, 313, decided in 1870, to *Schulenberg v. City of Reading,* supra, decided in 1966, the rule that a private individual cannot challenge municipal procedure and organization has been undeviatingly followed, unless the plaintiff's right to bring the action was not properly challenged. In this connection, the court's opinion in *Smith v. City of Emporia,* supra, cited the cases of *Stewart v. Adams,* 50 Kan. 560, 32 Pac. 122; *Eskridge v. Emporia,* 63 Kan. 368, 65 Pac. 694, and *Brown v. Junction City,* 122 Kan. 190, 251 Pac. 726, and stated:

> "Appellant insists that *Stewart v. Adams* . . . and *Brown v. Junction City* . . . require a decision contrary to the one we have heretofore announced. Without laboring what was said or held in those cases it will be

noted that the question of the plaintiff's lack of capacity to maintain the action was neither raised nor passed on. For that reason they are not decisive here. The same is true of *Eskridge v. Emporia* . . ." (1. c. 193.)

In the recent case of *James v. City of Pittsburg,* 195 Kan. 462, 407 P. 2d 503, a private individual challenged the city's annexation of adjacent land, and in the opinion it was said:

". . . Inasmuch as the city gave no notice of cross-appeal, as provided by statute, its contention, as we have heretofore stated it [that plaintiffs are not the proper parties to maintain this action], is not properly before us and may not be considered." (1. c. 463.)

As indicated by our numerous decisions, the foregoing rule of universal application has been examined and re-examined with great care and has always been reaffirmed; it is said to be founded upon public policy and has been consistently applied regardless of whether the procedure was a direct attack upon annexation such as here presented (*Smith v. City of Emporia,* supra; *State, ex rel., v. City of Kansas City,* 186 Kan. 190, 350 P. 2d 37) or an indirect or collateral attack upon annexation such as in *Topeka v. Dwyer,* supra. The rule has been held applicable to all types of actions attacking the legality of corporate existence of cities and districts regardless of whether the attacking procedure was injunction (*Chaves v. Atchison,* supra,) quo warranto (*State, ex rel., v. City of Kansas City,* supra), declaratory judgment (*Fairfax Drainage District v. City of Kansas City,* 190 Kan. 308, 374 P. 2d 35), appeals from an order of the Board of County Commissioners (*Lampe v. City of Leawood,* 170 Kan. 251, 225 P. 2d 73), habeas corpus (*In re Short, Petitioner,* 47 Kan. 250, 27 Pac. 993), or criminal defense (*City of Topeka v. Dwyer,* supra).

Since it is clear from our decisions that the foregoing rule prohibits private individuals from maintaining actions attacking the validity of proceedings extending the corporate limits of a city, it is necessary to examine the new Code of Civil Procedure, and particularly K. S. A. 60-1203, to ascertain if it made a change of procedure or substance in the statutory law or whether it remained substantially the same.

In considering this question, it has been held that a change in phraseology or the deleting of a phrase of the original act raises a presumption that a change of meaning was intended. (*State, ex rel., v. Richardson,* 174 Kan. 382, 256 P. 2d 135; *Leslie v. Reynolds,* 179 Kan. 422, 428, 295 P. 2d 1076.) It has also been held that in determining the legislative purpose, the history of the enactment

of the statute and of its amendments may always be inquired into (*Atchison, T. & S. F. Rly. Co. v. State Highway Commission,* 123 Kan. 576, 255 Pac. 966); that the words of a statute must be taken in the sense in which they were understood at the time the statute was enacted (*State, ex rel., v. Moore,* 154 Kan. 193, 117 P. 2d 598), and that in determining legislative intent, courts are not limited to mere consideration of words employed, but may properly look to the purpose to be accomplished and the necessity and the effect of the statute, under the different constructions suggested (*City of Emporia v. Norton,* 16 Kan. 236, Syl. ¶ 2; *Natural Gas Pipeline Co. v. Commission of Revenue & Taxation,* 163 Kan. 458, 466, 183 P. 2d 234).

In April, 1960, the Judicial Council appointed an advisory committee of eminent and experienced lawyers and district court judges to draft a suggested revision of the Code of Civil Procedure. The advisory committee's work was carefully considered, and as separate sections of the Code were drafted, they were submitted to the Bench and Bar for specific recommendations. Some of the sections in Chapter 60 were not substantially revised, but the committee made substantial changes in the procedural and the substantive provisions of other sections. However, as the sections were submitted, the committee appended valuable advisory notes so the Bench and the Bar would be informed of what was intended. In the November, 1962, Special Report of the Judicial Council Bulletin, the preface reads, in part:

"This bulletin presents recommendations for the revision of . . . Quo Warranto. . . .

"This issue completes the recommendations for the revision of the Code of Civil Procedure. The recommendations will be corrected to reflect the suggestions made by the members of the bar, and a bill drafted for the requested approval by the legislature."

On pages 3 and 4 of that special report were the following recommendations of the advisory committee, in part:

"ARTICLE 14—QUO WARRANTO"

---

"60-1402. *Jurisdiction and Grounds* . . ."

---

"COMMITTEE NOTES

"This section *is the same as* G. S. 60-1602 except the fifth ground of the old statute has been eliminated as unnecessary. (Emphasis supplied.)

"60-1403. *Name in Which Action Prosecuted; Damages.* Where the action is brought by a person claiming an interest in an office, franchise or corporation, or claiming an interest adverse to a resolution, ordinance, franchise, gift or grant, which is the subject of the action, it shall be prosecuted in the name and under the direction of such person, otherwise it shall be prosecuted in the name of the state by the attorney general or county attorney. Whenever the action is brought by the attorney general or the county attorney against a person for usurping an office, the petition shall state the name of the person rightfully entitled to the office. When the action in such case is brought by the person claiming title, he may claim and recover any damage he may have sustained."

"COMMITTEE NOTES

"This section *is substantially the same* as G. S. 60-1403 [*sic*] [60-1603]. The clause relating to prosecutions in the name of the state has been eliminated as self evident." (Emphasis supplied.)

The final draft of the Code of Civil Procedure as it was presented to the 1963 Legislature was the result of industrious and careful work on the part of the committee, members of the Judicial Council, and many other lawyers and local bar associations who had studied the tentative draft and made suggestions. The committee's advisory notes were appended to the various sections and were a valuable aid in explaining to the Legislature what the committee intended. The new Code was enacted by the Legislature in a single bill (Senate Bill No. 140) and made effective January 1, 1964.

It is unnecessary to here trace in detail the legislative history of the enactment of Senate Bill No. 140. It is sufficient to say that when the bill passed the Senate and the House of Representatives there was no discussion or amendments to the bill (Senate and House Journals, 1963 Session), and this fact compels the conclusion the Legislature relied heavily upon the recommendations of the advisory committee and the approval by the Judicial Council. The advisory committee's recommended quo warranto Sections 60-1402 and 60-1403 now appear in the Code of Civil Procedure as K. S. A. 60-1202 and 60-1203, respectively, and the language of 60-1403 heretofore quoted is identical to 60-1203. The subject matter of quo warranto as here pertinent, was formerly contained in G. S. 1949, 60-1602 and 60-1603. Those sections were repealed when the new Code became effective, and a change in the section numbers was brought about when the Code was published by the Revisor of Statutes in the Kansas Statutes Annotated.

As the advisory committee's notes indicate, K. S. A. 60-1203 is substantially the same as the former statute. (G. S. 1949, 60-1603.) The language was rearranged, and the clause relating to prosecu-

tions in the name of the state was eliminated as self evident. The words "resolution" and "ordinance" were added so that the clause now reads: "or claiming an interest adverse to a resolution, ordinance, franchise, gift or grant . . ."

The plaintiff contends that the arrangement of the language emphasizes the right of a private individual to maintain quo warranto to protect his personal rights; that by the addition of the words "resolution" and "ordinance" he may now institute quo warranto proceedings where he can show an interest adverse to a resolution or ordinance, and that the section as revised modified this court's rule of exclusive control by the state through its proper officers to question acts or proceedings which directly attack corporate existence. In support of his contention, he refers to the agreed statement of facts that.

". . . for the purposes of this lawsuit that if any person, individual or corporation has an interest adverse to these ordinances . . . this plaintiff has such an interest and is a proper person to bring this action . . ."

He further asserts that the clear intent of the Legislature was to allow private individuals having an interest adverse to an ordinance, to file suits in their own name challenging the legality of an annexation ordinance, and since the parties' stipulations of the facts admit the plaintiff has such an adverse interest, he is authorized to maintain this action.

We cannot agree with the plaintiff's contention that the addition of the words "resolution" and "ordinance" invested him with a right to directly attack the annexation ordinances. A similar question was presented in *Miller v. Town of Palermo*, 12 Kan. 14,* 21, decided in 1873. Private individuals challenged the corporate existence of Palermo. The plaintiffs recognized the rule that private individuals could not challenge corporate existence (*Craft v. Jackson Co.*, supra), but contended an amendment to the Code of Civil Procedure in 1871 (L. 1871, Ch. 116, Sec. 2), relating to the name in which quo warranto actions could be prosecuted and which added the clause, "or claiming any interest adverse to the franchise, gift or grant," permitted them to maintain an action in quo warranto attacking corporate existence. In reply to the contention, Mr. Justice Brewer, speaking for the Court, said:

". . . We do not understand this language as giving a right, but only as prescribing the form of action. No person is authorized to bring an action of *quo warranto* who did not have that right before; but if one who is authorized does bring it, he must bring it in his own name, and not in the name of the

state upon his relation. 'When the action is brought,' assumes that the action is rightfully brought. * The amendment consists in adding the clause, 'or claiming any interest adverse,' etc.; so that now a person claiming an interest *in* or one *adverse* to any franchise must, if entitled to an action of *quo warranto*, bring it in his own name. What the nature of the interest, then, must be *in* or *adverse* to a franchise to secure to an individual the right to this action is not defined. The language used, it is true, is general; 'an interest'—any interest'—are the terms employed. *But this general language must be construed with reference to the purpose of the section. This, as we have seen, and as is evident, is to regulate the form in which such actions shall be brought; and language thus used should be construed as having reference to rights of action already existing, rather than as creating new rights . . .*" (1. c. 23.) (Emphasis supplied.)

If this court denied in 1873 that the addition of the clause, "or claiming any interest adverse to the franchise, gift or grant," enlarged the rights of private individuals to use quo warranto to challenge municipal organization, it seems self evident that the addition of the words "resolution" and "ordinance" to that same clause could not grant such a right effective January 1, 1964. Hence, we conclude the arrangement of the language of 60-1203 and the addition of the words "resolution" and "ordinance" was intended by the Legislature to broaden the field in which private individuals might attack municipal procedures by an action of quo warranto where they allege an interest adverse to a resolution and ordinance, but the action is limited to attacks which admit the fact of corporate organization. In other words, while the section broadened the field of the form of action, it is construed as having reference to rights of action already existing and did not create any new rights of action. (*Miller v. Town of Palermo*, supra.)

In our judgment, the conclusion herein announced finds support in *Schulenberg v. Reading*, supra, decided after K. S. A. 60-1203 became effective, where, as previously indicated, this court held that private individuals were authorized to maintain an action directly attacking ordinances of a city creating a district which had no attributes of corporate existence.

We hold that the plaintiff had no right to maintain the action and the parties' stipulations of fact that the plaintiff had an interest adverse to the ordinances is of no consequence. It is a universal rule of law that parties cannot, by consent, confer jurisdiction of the subject matter of an action which the court did not otherwise have. (*Behee v. Beem*, 156 Kan. 115, 131 P. 2d 675; *In re Estate of Freshour*, 177 Kan. 492, 280 P. 2d 642; *In re Estate of Bengston*,

182 Kan. 322, 320 P. 2d 800.) Jurisdiction of the subject matter is the power to inquire and adjudge whether the facts of a particular action make that case a proper one for jurisdictional consideration by the judge before whom it is brought. It is the power to decide concerning the general question involved, and not the exercise of that power. In the instant case, the subject matter of the action was the validity of the ordinances of the city annexing the territory involved. The plaintiff having no capacity to attack the legality of the corporate integrity of the city, we are not warranted to consider whether the steps taken to bring the tracts of land into the city were legal or not. The objection which the plaintiff makes may only be considered in a direct proceeding prosecuted at the instance of the state by the attorney general or the county attorney pursuant to K. S. A. 12-502c. (*Chaves v. Atchison,* supra.)

The judgment is reversed with directions to dismiss the action.

FONTRON, J., dissenting: I am, respectfully, unable to agree with the opinion held by the majority of the court.

This action in quo warranto is brought by a landowner contesting the validity of seven Kansas City annexation ordinances, four of which are admittedly invalid. It is agreed that plaintiff has an interest adverse to the three ordinances which the city claims are legal.

The pertinent statute, K. S. A. 60-1203, is not set out in the court's opinion. It reads:

"Where the action is brought by a person claiming an interest in an office, franchise or corporation, or claiming an interest adverse to a resolution, ordinance, franchise, gift or grant, which is the subject of the action, it shall be prosecuted in the name and under the direction of such person, otherwise it shall be prosecuted in the name of the state by the attorney general or county attorney. . . ."

These provisions seem as clear and unambiguous as the English language affords. In my judgment, the statute should be construed to mean exactly what it says. Not a single word is obscure in meaning, nor is the phraseology complex.

It is the general rule that words in common use are to be given their natural and usual meaning (*Pfleiderer v. Brooks,* 122 Kan. 647, 253 Pac. 549). Concomitantly, where the language of a statute is definite, clear and unambiguous, there is nothing left for interpretation (*Taylor v. S. H. Kress & Co.,* 136 Kan. 155, 12 P. 2d 808).

Should there be the least lingering doubt that this statute permits

a person to challenge, in his name, a city ordinance adversely affecting his interest (as the statute expressly provides), that doubt should be completely dispelled by the amendment to the former law (G. S. 1949, 60-1603) by which the words "ordinance" and "resolution" were added to the statute.

Under the former statute, which provided that where an action was brought by a person claiming an interest adverse to a franchise, gift or grant it was to be prosecuted in that person's name, this court consistently denied the right of an individual to bring an action questioning the validity of a city ordinance. The many cases cited in the court's opinion are to such effect, but all were decided under the old statute. By legislative action, that statute was amended and it now authorizes a person to bring an action where his asserted interest is adverse to a "resolution" or "ordinance" as well as adverse to a "franchise, gift or grant."

It is a cardinal rule of construction that where an existing statute is amended by legislative enactment, a change in the law as it was must have been intended. This court has adhered to that sound principle to the present time, our most recent expression being found in *Curless v. Board of Johnson County Commissioners*, 197 Kan. 580, 419 P. 2d 876. In *Curless*, we said:

"But when the legislature revises a prior existing law it will be presumed that the legislature intended to make some change in the law as it existed prior to the amendment. In the case of *State, ex rel v. Richardson*, 174 Kan. 382, 256 P. 2d 135, at page 386, this court said:

" 'We will presume that the legislature in revising the mentioned statute intended to make some change in the existing law and we will, therefore, give effect to the amendment. A change in phraselogy or a deleting of a phrase of the original act raises a presumption that the change of meaning was also intended.'

"Any other construction would mean the legislature accomplished nothing by its revision. We must assume that a revision of a prior law was intended to supply some want and to fill some deficiency in existing legislation. (*City of Emporia v. Norton*, 16 Kan. 236; *Brown v. Illinois Bankers Life Assur. Co.*, 144 Kan. 670, 63 P. 2d 165; *State, ex rel v. Richardson*, supra.)" (p. 587.)

In discussing the meaning, purpose and effect of the change effected in the old statute by the 1963 amendment, Judge Gard in his Kansas Code of Civil Procedure, annotated, says on pages 673 and 674:

"Heretofore there has been no doubt that an attack on the validity of a city's attempt to extend its boundaries could be made only by the state through

the county attorney or the attorney general, no matter how personal rights might be affected by the imposition of additional tax burdens or otherwise. . . .

"By changing the order of arrangement of the language this section seems to emphasize the right of private persons to maintain quo warranto to protect their personal interests as of primary importance, without limiting the power of the state to resort to the remedy where the matter is strictly of public concern or where private persons fail to act. No bar is placed on the right of the state to intervene in the interest of the general public, but the exclusive right of the attorney general to control and dismiss the proceedings is apparently curtailed.

"The former statute recognized the right of private persons to bring the action where there was a claim of interest in a franchise, gift or grant or an interest adverse thereto. The new section adds the words 'resolution, ordinance,' so that if a private party can show an interest adverse to a 'resolution, ordinance, franchise, gift or grant' the action can be maintained by him. The apparent purpose of adding 'ordinance' and 'resolution' was to modify the principle of exclusive control by the attorney general over the regularity of municipal proceedings.

"It is still necessary in any event that a private person be able to show that he has a special and peculiar interest and right (or that there has been an invasion of right) not enjoyed or suffered by the public generally. In this respect the test of his right to bring the action is now on the same ground as in injunction or mandamus. . . . Applying the principles applicable to the other remedies mentioned it would seem that now if the illegal annexation of property to a municipality were shown to impose additional tax burdens on the property annexed, those persons affected should at least have their day in court either through their own action or through representation by the county attorney or attorney general."

This discussion suggests the dilemma in which an individual could find himself under the old statute, and under the new as well, in view of the majority opinion herein. Where an illegal annexation would result in additional taxes on property in the area annexed, an individual owner's remedy would depend entirely on the willingness of the attorney general or the county attorney to prosecute an action challenging the annexation ordinance in the name of the state. This court has also held, in State, ex rel., v. City of Kansas City, 186 Kan. 190, 350 P. 2d 37, that the attorney general has an absolute right to dismiss such an action where he has superseded the county attorney on whose relation the action was originally brought. If both county attorney and attorney general refused in the first instance to prosecute an action, or if either moved to dismiss an action after it had once been instituted, the aggrieved owner would be left without relief.

By way of illustration, let us suppose that a city, in violation of

K. S. A. 12-502a, presumes to annex, by ordinance, 160 acres of un-platted land over the protest of the owner, where the land is not circumscribed by platted territory taken into the city, and is not improved property receiving city benefits and protection. In such event, the landowner would undoubtedly be subjected to a tax burden not suffered by the public generally and he should be entitled to his day in court. Yet, under the court's interpretation of the amended statute, the afflicted owner would have no redress whatever should the attorney general and county attorney refuse to act in his behalf. In my opinion, the purpose of the 1963 amendment was to guard against such an unacceptable hiatus in the law.

In its brief, as *amicus curiae*, the League of Kansas Municipalities points out that under the provisions of K. S. A. 12-502c the attorney general or the county attorney is limited to one year in bringing an action challenging the validity of an annexation ordinance, while an individual is not subject to that limitation. I recognize the validity of the complaint, but believe the discrepancy may easily be remedied by the legislature. It is a matter which should be corrected by legislative action rather than by judicial misconstruction.

I would proceed to consider this appeal on its merits.

SCHROEDER, J., joins in the foregoing dissent.